990 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles W. THOMPSON, Plaintiff-Appellant,
v.
Wayne E. ESTELLE, et al., Defendants-Appellees.
 No. 92-55229.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1993.*
Decided March 24, 1993.
 
 Before WALLACE, Chief Judge, and FARRIS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Charles W. Thompson, a California State prisoner, appeals pro se the district court's summary judgment for defendants in his 42 U.S.C. § 1983 action. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, vacate in part and remand.
 
 
 3
 * Standard of Review
 
 
 4
 We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Summary judgment is appropriate if the evidence, construed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fu-Kong Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 II
 Background
 
 5
 Thompson filed a complaint with the prison authorities alleging correctional officer Brodersen was spreading word that Thompson was an informant. Thompson alleged that Brodersen's disclosure potentially placed Thompson's life in danger and asked that Brodersen be appropriately disciplined. Thompson later withdrew his complaint.
 
 
 6
 On October 4, 1990, the Disciplinary Committee found Thompson guilty of receiving marijuana for personal use, and recommended that Thompson be unassigned from his position as a classification clerk due to the sensitive nature of the job. Thompson was given one month in which to find a new job.
 
 
 7
 Thompson sought a new position as a medical technician assistant. Supervisor Hewitt assured Thompson the position was acceptable and called Ms. Nugent, the supervisor for the new position, to recommend Thompson for the job. Nugent agreed to hire Thompson on October 29, 1990. On November 1, 1990, however, Nugent dismissed Thompson.
 
 
 8
 Thompson filed another complaint against Brodersen on November 5, 1990, demanding that he either be given his assignment back or that he be given a "justifiable reason" why he was restricted from holding clerical jobs. Hewitt, who interviewed Thompson regarding the complaint, told Thompson that he was restricted from holding any clerical position in which he might have access to sensitive information. Shortly thereafter, Thompson was assigned a position at the education office, as a Teacher's Assistant.
 
 
 9
 Thompson sued Associate Warden Kamien and officer Brodersen in their individual capacities, alleging that they violated his Fourteenth Amendment right to due process and equal protection, his Eighth Amendment right to be free from cruel and unusual punishment, and his First Amendment right to free speech. Thompson contends that defendants violated his First Amendment right to free speech by removing him from the clerical job and by threatening to transfer him to another prison in retaliation for complaints Thompson filed against Brodersen. Thompson sued Warden Estelle in his official capacity, seeking to enjoin Estelle from transferring him to another prison. The district court granted summary judgment for defendants. The district court, adopting the findings of the magistrate judge, found that Thompson's Fourteenth Amendment and Eighth Amendment claims were without merit. The district court did not address Thompson's First Amendment claim.
 
 
 10
 On appeal, Thompson contends the district court erred by failing to address his First Amendment claim. The defendants contend the district court properly granted summary judgment in their favor because Thompson failed to contradict the facts set forth in respondents' declarations and exhibits by specific facts showing there is a genuine issue for trial.
 
 III
 First Amendment Claim
 
 11
 To state a claim under section 1983, a plaintiff must show that defendants (1) acted under color of state law (2) to deprive plaintiff of rights secured by the Constitution or federal statutes. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988). Deliberate retaliation by state actors against a person exercising his First Amendment right to petition the government for redress of grievances is actionable under section 1983. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989).
 
 
 12
 A prisoner's First Amendment rights, however, may be curtailed to a greater degree than those of ordinary citizens in the interest of the "institutional need to maintain order." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985); Grummett v. Rushen, 779 F.2d 491, 493 (9th Cir.1985). A prisoner suing prison officials under section 1983 must establish not only that the defendants retaliated against him for bringing civil rights litigation, but also that the authorities' allegedly retaliatory action did not advance legitimate goals of the correctional institution or that it was not narrowly tailored to that end. Rizzo, 778 F.2d at 532. Defendants have the authority to take legitimate actions in the interest of prison security. See id. Nevertheless, that authority is not a license to retaliate against prisoners for filing civil rights complaints under the guise of promoting prison security. See id.; see also Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir.1989).
 
 
 13
 Here, although defendants concede that Thompson was removed from his position as a medical office clerk, they argue that his removal was necessary because of the sensitive nature of the position and in order to prevent Thompson from potentially jeopardizing prison security by selling drugs to inmates in D-Quad. Thompson alleges that Brodersen repeatedly threatened, both directly and indirectly, to punish Thompson for filing a complaint against the "wrong man." According to Thompson, Brodersen threatened not only to remove him from his jobs, but to transfer him to another prison.[1]
 
 
 14
 In addition, the record supports a finding both that Thompson had no access to sensitive information in his job at Nugent's office and that he had no access to other quadrants in the prison. According to the affidavit of a fellow prisoner, Nugent's office is in the "so called common area[ ] of the prison and [does] not provide access to any other quadrants." The door to the "Delta Quad" is allegedly locked at all times, such that Thompson would have no access to the prisoners in that quad, and they would have no access to his office. Further, the building in which Thompson would work was ostensibly devoid of any medical supplies, and the inmate swears he had no access to any sensitive or confidential information when he worked there.
 
 
 15
 Thompson's allegations, viewed in the light most favorable to Thompson, present a genuine issue as to whether the removal from his job as Nugent's clerk "did not advance legitimate goals of the institution" or were not "tailored narrowly enough to achieve such goals." See Rizzo, 778 F.2d at 532; see also Valandingham, 866 F.2d at 1139; Tzung, 873 F.2d at 1339-40. A reasonable factfinder could find that Brodersen removed Thompson from his clerical position solely to punish Thompson for having filed complaints against Brodersen. See Rizzo, 778 F.2d at 532. The district court erred by granting summary judgment without addressing this claim.
 
 IV
 Transfer
 
 16
 Thompson also seeks to have Estelle enjoined from transferring him to another prison on the ground that any transfer would be in retaliation for his exercising his First Amendment rights. Thompson is not entitled to such an injunction, however. Although the Ninth Circuit recognizes that a prisoner may have a claim under section 1983 if he can show he was transferred solely in retaliation for actions protected by the First Amendment, see Rizzo, 778 F.2d at 530-32, Thompson has alleged nothing more than that he fears the possibility of being transferred. There is no right to be free from the mere possibility of being transferred. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987). Thus, the district court properly granted summary judgment for Estelle on this claim. We remand this case to the district court for further findings only on the issue of Thompson's First Amendment claim.
 
 
 17
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Although Brodersen left the prison in December 1990, and although Thompson concedes Brodersen stopped "harassing" Thompson once he obtained the education position, Thompson alleges he is still restricted from clerical work because of defendant Kamien